**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 1:21-cv-00022 |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION DENYING DEFENDANTS' MOTIONS TO DISMISS** |
| UNITED STATES TERRITORY OF GUAM, and THE GOVERNMENT OF GUAM RETIREMENT FUND, | |
| Defendants. | |

This civil action arises under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). The United States brings suit on behalf of five servicemembers as well as other potential servicemembers pursuant to 38 U.S.C. § 4323(b), alleging that Defendants United States Territory of Guam and Government of Guam Retirement Fund's treatment of employees using donated leave under Guam's leave sharing program while on active military duty as having breaks-in-service and failure to give pension benefit credit during these periods of leave violates USERRA. Defendant United States Territory of Guam ("Guam") filed a motion to dismiss, or alternatively, for a more definite statement (ECF Nos. 8, 8-1), and Defendant Government of Guam Retirement Fund ("GGRF") filed a separate motion to dismiss (ECF No. 9). The matters were fully briefed and came on for a hearing during which time the Court DENIED the motions. (Civil Mins., ECF No. 25.) The Court now issues this memorandum decision setting forth its reasoning for denying Defendants' motions.

# I.    BACKGROUND

The United States filed this civil action against Guam and the GGRF (collectively, "Defendants"), alleging that Defendants are violating the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq*., by treating employees using donated leave while on active military duty as having breaks-in-service, and by failing to properly credit employees' periods of military leave while using donated leave as "service" with the employer for purposes of determining service credit and pension benefits. (Compl. ¶¶ 1, 58, ECF No. 1.)  The complaint alleges that Defendants' policy denied at least five, and potentially more, servicemembers proper retirement and pension credit in direct violation of USERRA's provision that servicemembers are entitled to credited service towards retirement with their civilian employer for time deployed, and if left uncured, "will slash their retirement benefits for the rest of their lives." (*Id*.) The Court has jurisdiction over this matter pursuant to 38 U.S.C. § 4323(b)(1).[1]

Specifically, the United States alleges that GGRF administers at least two defined benefit retirement plans for Guam, and under its plans, employees contribute a portion of their wages into the GGRF while Guam as the employer also contributes money to the fund. (Compl. ¶¶ 4–7.) An employee's pension benefit is partially based on the amount contributed as well as credited service, which "is the amount of time that counts towards an employee's pension benefit." (*Id*. ¶¶ 8-10.) Furthermore, an employee would need to earn at least nine months of credited service in the calendar year to receive a full year of service credit; otherwise, the credited service would be based on months earned. (*Id*. ¶ 11.)

---

[1] 38 U.S.C. § 4323(b)(1) provides that "[i]n the case of an action against a State (as an employer) or a private employer commenced by the United States [to enforce the rights under USERRA], the district courts of the United States shall have jurisdiction over the action." Further, "State" is defined as "each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, *Guam*, the Virgin Islands, and other territories of the United States (including the agencies and political subdivisions thereof)." 38 U.S.C. § 4303(14) (emphasis added).

The complaint further alleges that:

> USERRA provides that a qualified servicemember who is reemployed by his or her civilian employer "shall be treated as not having incurred a break in service with the employer or employers maintaining [an employee pension benefit plan]." 38 U.S.C. § 4318(a)(2)(A). "Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the [pension benefit] plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan." 38 U.S.C. § 4318(a)(2)(B).

(Compl. ¶ 55.)

Under Guam's leave sharing program, 4 G.C.A. § 4109.2, employees can voluntarily transfer a portion of their sick or annual leave to a leave bank, and employees who have exhausted their sick leave, annual leave, or compensatory time may draw leave from this leave bank to remain in paid-leave status rather than leave-without-pay status for up to 90 days per year. (Compl. ¶¶ 12–14.) Under this program, however, Guam and the GGRF do not give employees credited service towards their retirement for periods they used donated leave, and in some instances, where Guam contributed to an employee's retirement account and withheld an employee's contribution when it used donated leave during military service, GGRF refunded contributions and discredited service when it learned of such incidents. (*Id*. ¶¶ 15–16.)

The United States therefore alleges that Guam's administration of its leave sharing program, which is superseded by USERRA, denied five servicemembers a pension benefit guaranteed by USERRA and will continue to deny individuals who use donated leave while on military active duty. (*Id*. ¶¶ 52, 61.) The five servicemembers include the following:

1) Jesse Cruz, who joined Guam Fire Department in October 1992; retired in 2020; was deployed on active military duty with the Guam Air National Guard Reserves for parts

of 2010 and 2012, honorably discharged each time, and then reemployed with Guam; and used the leave sharing program at least between February and June 2012. Defendants did not give Cruz 4 months and 15 days of credited service towards retirement while he used donated leave during active military duty, resulting in less accumulated credit and lower pension annuity for Cruz. (*Id*. ¶¶ 18–25.)

2) Raymond San Nicolas, who joined the Guam Fire Department in May 1992; retired in August 2018; was deployed on active military duty as a National Guard several times between May 2002 and November 2012, honorably discharged after each time, and reemployed with Guam; and used donated leave for portions of this time. However, he did not receive credited service for those donated leave periods, resulting in breaks-in-service and lower pension annuity for his life. (*Id*. ¶¶ 26–31.)

3) Alan Torre, who joined the Guam Fire Department in October 1992; retired in September 2020; was deployed from January 2007 to September 2008 on active duty as a National Guard, honorably discharged after each deployment, and reemployed with Guam; and used donated leave around March 17, 2007 through December 8, 2007. He did not receive credited service for those donated leave periods, resulting in breaks-in-service and lower pension annuity for his life. (*Id*. ¶¶ 32–37.)

4) Andy Quinata, who joined the Guam Fire Department in October 1992; was deployed on active military duty several times between May 2002 and December 2016, honorably discharged after each time, and reemployed with Guam; and used donated leave for potions of his military service. Because he was not given credited service resulting in breaks-in-service, the United States alleges he will have lower pension

annuity for life and was informed he had to work two additional years for full retirement benefits. (*Id*. ¶¶ 38–43.)

5) Frederick Guzman, who was employed with Guam Department of Education since August 1996; was deployed on active duty as a National Guard several times between October 2001 and December 2020, then honorably discharged after each deployment, and reemployed by Guam; and used donated leave for portions of his service. He did not receive credited service for those donated leave periods, resulting in breaks-in-service and lower pension annuity for his life. (*Id*. ¶¶ 44–49.)

The United States thus seeks declaratory and injunctive relief. As to declaratory relief, the United States seeks declarations that: (1) Guam and GGRF violated USERRA section 4318(a)(2)(B) by failing to properly treat servicemembers' periods of military leave while using donated leave as "service" with the employer for purposes of the accrual of retirement benefits; (2) Guam violated USERRA section 4318(b)(1) when it failed to make contributions to GGRF during this period for those using donated leave; and (3) GGRF violated USERRA section 4318(b)(1) when it refunded pension contributions made by Guam and employees for periods the employees were serving in the military while using donated leave. (*Id*. at 10-11 ¶¶ A-C (prayer for relief).)

The United States also seeks the Court to require: (1) Guam and GGRF to comply with USERRA by retroactively crediting those employees and retirees who used donated leave while serving, retroactively calculating the credited service and retirement benefits, giving notice to current and former employees and retirees of the resolution of the suit and the recalculations, and to be enjoined from refusing to treat servicemembers' period of military leave while using donated leave as service for pension benefits; (2) Guam to retroactively to make contributions to GGRF

for those periods servicemembers used donated leave, and to be enjoined from refusing to make contributions; and (3) permit the affected employees to make employee-side contributions. (*Id*. at ¶¶ D-F.)

## II. MOTIONS TO DISMISS

Defendant Guam filed a motion to dismiss, or in the alternative, for a more definite statement, implicitly arguing that the servicemembers waived or released their rights to credited service by using the leave sharing program, and expressly arguing that the servicemembers' claims are barred at least in part by statute of limitations and laches. (Guam Notice of Mot., ECF No. 8; Guam Mem. in Support, hereinafter "Guam Mot.", ECF No. 8-1.) Defendant GGRF filed a separate motion to dismiss, arguing that it is not an "employer" for purposes of the USERRA violation that the United States claims. (GGRF Mot., ECF No. 9.) The United States filed separate oppositions to both motions. (Opp'n Br. to Guam, ECF No. 13; Opp'n Br. to GGRF, ECF No. 12.) Both Defendants also separately filed a reply. (Guam Reply Br., ECF No. 16; GGRF Reply Br., ECF No. 15.) Having considered the briefs, the relevant case law, and counsels' oral arguments, the Court DENIED both motions for the reasons set forth below.

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must take all factual allegations as true and view the complaint in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (citation omitted). The factual allegations need not be detailed, but a plaintiff must provide "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and limited materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). If a court considers other evidence, "it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Id.* at 907 (citations omitted).

"Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)). The reason is because "Rule 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm. v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). But an affirmative defense "may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citations omitted); *see Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint."). For example, if " the statute of limitations issues are apparent on the face of the complaint[,]" a district court may address them on a motion to dismiss. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); *see Cedars–Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128–29 (9th Cir. 1999) (citations omitted) ("[A]ffirmative defenses like the statute of limitations may also be raised in motions to dismiss filed before the first

responsive pleading.").

**B. Discussion**

The Court will first address GGRF's motion to dismiss given that it seeks dismissal on the sole basis of not being an "employer" under USERRA. The Court will then address Guam's various arguments.

### 1. *Whether GGRF is an "employer" under USERRA*

USERRA generally defines an "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including -- . . . a State." 38 U.S.C. § 4303(4)(A)(iii). State is defined to include Guam. *Id*. § 4303(14). Thus, the Territory of Guam is undisputedly an employer under § 4303(4)(A), but GGRF is undisputedly *not* one under § 4303(4)(A)—nor does the United States allege so in its complaint—as GGRF does not pay the salary or wages for work and has no control over employment opportunities.

However, USERRA also provides two alternative definitions for "employer." The first pertains to an employer of a National Guard technician, which is wholly inapplicable here. *See* 38 U.S.C. § 4303(4)(B). The second alternative definition, which is relevant here, provides: "[e]xcept as an actual employer of employees, an employee pension benefit plan described in section 3(2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1002(2)) shall be deemed to be an employer only with respect to the obligation to provide benefits described in section 4318." 38 U.S.C. § 4303(4)(C). The United States alleges that GGRF is an employer under this § 4303(4)(C) provision. (Compl. ¶ 5.) On the other hand, GGRF seeks dismissal on the basis that it is not an "employer" under this specific provision. (GGRF Mot. 4.)

First, GGRF primarily argues that it is not an employer because the Employee Retirement

Income Security Act ("ERISA") exempts government plans.  (GGRF Mot. at 4–7.) However, USERRA, 38 U.S.C. § 4303(4)(C), ties its definition of an employer to an "employee pension benefit plan" described in section 3(2) of ERISA, which itself defines "employee pension benefit plan" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program-- (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond[.]

29 U.S.C. § 1002(2)(A). Under ERISA, however, "[t]he provisions of this subchapter shall not apply to any employee benefit plan" that is a "government plan" as defined in section 1002(32) of ERISA. 29 U.S.C. § 1003(b)(1). "[G]overnment plan" as defined in 29 U.S.C. § 1002(32) of ERISA is "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(10) further defines "State" to include Guam. Thus, GGRF argues that because ERISA at 29 U.S.C. § 1003(b)(1) exempts government plans, GGRF, as a government plan, is exempt from the definition of employee pension benefit plan as defined in ERISA and therefore cannot be deemed an employer under USERRA. (GGRF Mot. 4–7.)

In support of this, GGRF relies heavily on *Rauback v. City of Savannah*, 2021 WL 1206611 at *17 (S.D. Ga., Mar. 30, 2021) to support its proposition that it is not an employer. (GGRF Mot. 7; GGRF Reply Br. 7–8). In *Rauback*,[2] the plaintiff sued the Savannah Airport Commission, its

---

[2] An appeal was filed on this case, but the appellant voluntarily withdrew his appeal and it was dismissed. *See Rauback v. County of Savannah*, 2021 WL 5048276, at *1 (11th Cir. Oct. 13, 2021).

executive director, and the City of Savannah. *Rauback*, 2021 WL 1206611, at \*1. The City in response argued that it was not an "employer" because it did not provide wages under 38 U.S.C. § 4303(4)(A), and it was the pension plan administrator, not the employee pension benefit plan under 38 U.S.C. 4303(4)(C). *Id*. at \*17. The district court there found that the City did not qualify as an employer with respect to Plaintiff's pension benefits, "because § 4303(4)(C) provides an exception for 'employee pension benefit plants [sic]' not for employee pension plan administrators." *Id*. (quoting 38 U.S.C. § 4303(4)(C)). The court there also reasoned that "[a]dditionally, § 4303(4)(C) only applies to those plans governed by the Employee Retirement Income Security Act ('ERISA')" and that "ERISA explicitly excludes government plans like the City's from its purview." *Id*. (citing 29 U.S.C. § 1003(b)(1)). Furthermore, because the plaintiff was bringing a retaliation claim under section 4311(b) as opposed to a section 4318 claim, the City could not be an employer. *Id*. at \*18. The court thus granted the City's motion for summary judgment. *Id*.

This Court, however, is not bound by the district court's decision in *Rauback*, nor its dicta pertaining to government plans being exempted from USERRA. Instead, this Court finds that GGRF undisputedly administers retirement plans, including two defined benefit (pension) plans, for certain eligible employees of the government of Guam, who, along with their employers, remit employee and employer contributions to these defined benefit plans. GGRF Mot. 9; Compl. ¶¶ 6–7; *see also* 4 G.C.A. § 8101 ("The purpose of the Fund is to provide retirement annuities and other benefits for the employees of the government of Guam who become aged or otherwise incapacitated[.]"). Thus, by *definition*, GGRF is an "employee pension benefit plan" as defined by ERISA, and as such is considered an "employer" under 38 U.S.C. § 4303(4)(C). While ERISA's § 1003(b)(1) precludes certain obligations in subchapter I from *applying* to government plans, it

does not necessarily exclude government plans from the *definition* of "employee benefit pension plans" as defined in Section 3(2) of ERISA, which is the relevant inquiry for whether a plan is an employer under USERRA. Furthermore, as the United States properly points out, ERISA's exemption at Section 1003(b)(1) only applies to a limited "subchapter" of ERISA—not to other provisions such as USERRA. (Opp'n Br. to GGRF 10). Rather, 20 C.F.R. § 1002.260(a), a code of federal regulation regarding USERRA, makes clear that:

> The Employee Retirement Income Security Act of 1974 (ERISA) defines an employee pension benefit plan as a plan that provides retirement income to employees, or defers employee income to a period extending to or beyond the termination of employment. Any such plan maintained by the employer or employers is covered under USERRA. *USERRA also covers certain pension plans not covered by ERISA, such as those sponsored by a State, government entity, or church for its employees.*

(emphasis added). The regulation thus makes clear that government plans are subject to USERRA. The only plan that USERRA does not cover is Federal Thrift Savings Plan. 20 C.F.R. § 1002.260(b). Thus, GGRF's reliance on the government plan exemption under ERISA is unsupported.

Second, GGRF relies predominantly on 38 U.S.C. § 4318(b)(1) to argue that only actual employers are liable. For example, it relies on 38 U.S.C. § 4318(b)(1), which provides that " *[a]n employer* reemploying a person under this chapter *shall*, with respect to a period of service described in subsection (a)(2)(B), *be liable to an employee pension benefit plan* for funding any obligation of the plan to provide the benefits . . . ." (Emphasis added). Under this provision, GGRF argues that the statute contemplates that an actual employer be liable, and not the plan administrator.[3] (GGRF Reply Br. 4-5.) However, this argument fails because 38 U.S.C. § 4318's

---

[3] Yet at oral arguments, counsel for GGRF contradictorily stated that GGRF is subject to § 4318, except that it has no

obligations are not limited to just § 4318(b)(1). 38 U.S.C. § 4318(a)(2)(A), for example, requires that the "employer or *employers maintaining the plan*" not treat a servicemember reemployed under USERRA as having incurred a break in service by reason of their period of service. (Emphasis added). In a similar fashion, § 4318(a)(2)(B) requires that the "employer or *employers maintaining the plan*" treat each period served by a person in the uniformed services as service "for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan." (Emphasis added). Thus, § 4318 plainly contemplates obligations on employers maintaining the plan—not just an actual employer. Even in *Rauback*, which GGRF heavily relies on, the district court there expressly recognized that "38 U.S.C. § 4303 (4)(C) allows a cause of action against an employee benefit plan for violations of 38 U.S.C. § 4318." *Rauback*, 2021 WL 1206611, at *18. GGRF's sole reliance on § 4318(b)(1) is therefore misplaced.

Third, GGRF argues that there is a distinction between an employee pension benefit plan and the pension plan administrator, and that 38 U.S.C. § 4303(4)(C)'s alternate definition applies to an "employee pension benefit plan." GGRF Reply Br. 10. GGRF again relies on *Rauback* for this proposition that liability is to the plan itself. *Id.* (citing *Rauback*, 2021 WL 1206611, at *17). However, GGRF appears to be both the plan and the administrator, as expressed by Guam statute and by GGRF's own arguments. *See* GGRF Reply Br. 9 ("There is no dispute that the GGRF is a 'governmental plan'[.]"); GGRF Reply Br. at 11 ("GGRF, as the administrator of the DB Plan . . . ."); *see also* 4 G.C.A. § 8101.2(a) ("The Fund shall maintain its status as a tax-qualified

---

obligations until certain conditions are met, such as the Guam (as the actual employer) first making contributions. Again, 38 U.S.C. § 4318(a)(2) clearly imposes obligations not on just the actual employer but on the "employers maintaining the plan." Moreover, the complaint alleges that even in some instances where Guam contributed to an employee's retirement account and withheld an employee's contribution when it used donated leave during military service, GGRF refunded contributions and discredited service when it learned of such incidents. (Compl. ¶¶ 15–16.)

governmental pension *plan*. . . . ") (emphasis added); 4 G.C.A. § 8101.2(b) ("The Fund shall be administered in accordance with the requirements of Section 401(a)(1), (2), (7), (8), (9), (16), (17), (25), (31), and (37) of the Code, as such provisions, as amended, apply to a governmental pension plan sponsored by the government of Guam."). Moreover, to be clear, pension "funds" or "plans" have been properly sued under USERRA.[4] *See Savage v. Fed. Express Corp.,* 856 F.3d 440 (6th Cir. 2017) (suing Federal Express Corporation d/b/a FedEx Express as well as FedEx Corporation Employees' Pension Plan and FedEx Corporation Retirement Savings Plan); *Goodman*, 2011 WL 4469513 (suing City of New York, New York City Police Department, as well as New York City Police Pension Fund); *cf. Imel v. Laborers Pension Tr. Fund for N. Cal.*, 904 F.2d 1327, 1332 (9th Cir. 1990) ("Here, the Fund is the only party with a significant interest in the proceeding, it is the party who will provide any relief, and in light of the objectives of the [Veteran's Readjustment Act] it is the only appropriate party for Imel to hale into court in this litigation."). Thus, irrespective of the technical distinctions between the plan itself and the administrator, GGRF is both, such that it is an "employer" under 38 U.S.C. § 4303(4)(C).

Accordingly, GGRF's motion to dismiss on the basis that it is not an "employer" under USERRA is DENIED. Having addressed GGRF's arguments, the Court will now address Defendant Territory of Guam's arguments for dismissal.

//

---

[4] The Court recognizes GGRF's observation that in the cases the United States relies on for government pension plans being covered under USERRA, most did not include a cause of action against the pension plan administrator. *See Krzyminski v. Spokane Cnty.*, 830 F. App'x. 918, 918-19 (9th Cir. 2020); *Espinoza v. City of Seattle*, 458 F.Supp.3d 1254, 1262–63 (W.D. Wash. 2020); *Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1108–09, 11–12 (W.D. Mich. 2001). However, that those cases did not include a cause of action against the plan administrator does not preclude a plan administrator from being sued as a defendant under section 4318. To be clear, in *Goodman v. City of New York*, 2011 WL 4469513, at *2 (S.D.N.Y. Sept. 26, 2011), the New York City Police Pension Fund was also sued as a defendant under 4318.

2. **Whether Defendants' application of the leave sharing program violates USERRA, and whether servicemembers using donated leave under the program have waived or released their rights to credited service towards retirement**

Defendant Guam first argues that the Court should dismiss the United States' claim because Defendants' application of the leave sharing program does not violate USERRA as it (1) "treats military service member government employees the same as any other government employee[,]" and (2) "gives military service member government employees greater benefits than any other right or benefit forgone." (Guam Mot. 8, 12). The Court finds that the former argument is irrelevant because the United States is not bringing a discrimination claim against Defendants. The latter argument, however, is the crux of the parties' dispute.

The United States claims that Defendants violated USERRA by treating employees using donated leave while on active military duty as having breaks-in-service, and by failing to properly credit employees' periods of military leave while using donated leave as "service" with the employer for purposes of determining service credit and pension benefits. (*See* Opp'n Br. to Guam 4-5.) Specifically, it argues that Guam's application of the limitations of the leave sharing program under 4 G.C.A. § 4109.2(b)(3) violates 38 U.S.C. § 4318 of USERRA. (*Id.* at 5.)

38 U.S.C. § 4318(a)(2)(A) provides that "[a] person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services." USERRA furthermore expressly provides that

> [e]ach period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

*Id.* § 4318(a)(2)(B). USERRA therefore makes clear that there should be no breaks in service for this active-duty period, and "[a]n employer reemploying a person under this chapter shall, with respect to [such] period of service . . . be liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2)[.]" *Id.* § 4318(b)(1).

Under Guam law, government of Guam employees who are also in the military reserves or National Guard members are entitled to 15 days of military leave with pay within a fiscal year when called on for active military duty. 4 G.C.A. § 4119(a)-(b). Thereafter, service members must elect annual leave, compensatory-time accrued, or leave without pay. *Id.* at (b). The Government of Guam uniquely funds retirement contributions for military servicemember government employees who take *unpaid leave* while on active duty, 4 G.C.A. § 8137.2, which Defendant Guam recognizes, Guam. Mot. 9. Specifically, Guam law provides that:

> The government shall pay the employer's and employee's shares for Retirement Fund contributions, group health insurance premiums, and group life insurance premiums for all officers and other employees of the government of Guam *who are on leave without pay and on active duty* with the Guam National Guard or the reserve components of any of the Armed Services of the United States. All agencies and departments of the government of Guam shall fund, from their respective annual budgets, the contributions for retirement, health insurance, and life insurance authorized by this section.

4 G.C.A. § 8137.2 (emphasis added). Military servicemembers are also given retirement credit for their period of active military service if discharged under conditions other than dishonorable and reemployed by the Government of Guam. 4 G.C.A. § 8108(b).

Under Guam's Leave Sharing Program, a government of Guam employee, including those in military reserves or National Guard members being called to active duty, may voluntarily use donated leave generally up to 90 days instead of taking leave without pay. 4 G.C.A. § 4109.2(b)(4).

During this period, the recipient of donated leave receives the pay or salary of either the recipient or donor's rate, whichever is lower. 4 G.C.A. § 4109.2(b)(1). By using donated leave, however, recipients of donated leave, including servicemembers, are subject to the limitations of not using that period of donated leave as credit towards retirement. 4 G.C.A. § 4109.2(b)(3) ("[l]eave may not be transferred to another employee if as a recipient that employee intends to use it for credit towards retirement or accumulate leave," and that "[i]n no event shall transferred leave be converted to cash or retirement credit by the person to whom it is transferred.").

Thus, for military servicemembers who use donated leave under Guam's leave sharing program, they are not credited service for that period they are on active duty and use donated leave, resulting in a break-in-service. The United States thus argues that this violates USERRA, 38 U.S.C. § 4318. In contrast, Defendant Guam argues that its implementation of its leave sharing program does not violate USERRA because it merely provides military servicemembers a choice of an alternative form of leave to those who find it more beneficial, and that this choice is arguably much better. (Guam Mot. 10). In other words, those who choose to take donated leave receive the present value of their salary or something close to it, "which is more beneficial in their judgment than long-term retirement credit" and which "objectively and vastly outstrips" the benefit of the future value of "a periodic increment their annuity composed of up to 5 percent of their salary" during their leave period minus any obligations to remit contributions. (Guam Mot. 11-12.)

Given this greater benefit, Guam argues that it does not violate USERRA by implementing the leave sharing program and the leave sharing program statute is not superseded by USERRA because USERRA only "supersedes any state law that reduces any right or benefit of a person

protected by USERRA." (*Id.* at 10 (citing § 4302(b)).)[5] Guam argues, on the other hand, that "USERRA does not supersede any state law 'that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit' of a person protected by USERRA" (*Id.* (quoting § 4302(a)).)

However, as the United States properly notes (*see* Opp'n Br. to Guam 11), USERRA "establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects. *In other words, an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA*." 20 C.F.R. § 1002.7(a) (emphasis added); *see also Crews v. County of Mt. Vernon*, 567 F.3d 860, 867 (7th Cir. 2009) ("USERRA also encourages military service by authorizing employers to go above and beyond the minimum requirements of the statute."). USERRA expressly mandates service credit and pension contributions for servicemembers who have been re-employed after deployment on active military duty. *See* § 4318. Thus, to the extent that military servicemembers choose to participate in the leave sharing program and use donated leave, USERRA requires that this leave sharing program right only be "in addition" or "more beneficial" to a right provided for under USERRA in order for said program to not be superseded by USERRA. *See* § 4302(a); *see also* 20 C.F.R. § 1002.7(c) ("[A]lthough USERRA does not require an employer to pay an employee for time away from work performing service, an employer policy, plan, or practice that provides such a benefit is permissible under USERRA."). If military servicemembers were to receive salaries for their period of active service pursuant to Guam's Leave Sharing Program *in lieu of* their right to credited service and retirement contributions under § 4318, then USERRA does supersede 4 G.C.A. § 4109.2(b)(3) because the leave sharing program would

---

[5] Section 4302(b) provides, in relevant part, that USERRA "supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, other matter *that reduces, limits, or eliminates in any manner any right or benefit* provided by this chapter[.]" (emphasis added).

"reduce[], limit[], or eliminate[]" servicemembers' rights to credited service and contributions towards retirement for the period that donated leave is used. *See* § 4302(b); *see also* 20 C.F.R. § 1002.7(d) ("If an employer provides a benefit that exceeds USERRA's requirements in one area, it cannot reduce or limit other rights or benefits provided by USERRA.").

Yet Guam argues that requiring it to pay both retirement contributions and salaries or wages for a military servicemember on active duty would be asymmetrical and would treat servicemembers who use donated leave more preferentially than those who take leave without pay. In construing statutes in favor of servicemembers, however, courts have ruled in favor of this asymmetry. *See Ziober v. BLB Res., Inc.*, 839 F.3d 814, 819 (9th Cir. 2016) ("The Supreme Court and th[e Ninth Circuit] have repeatedly affirmed the principle that statutes concerning federal reemployment rights for military members are 'to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.'" (citation omitted)). While no Ninth Circuit case law squarely addresses this issue on point, other district courts in analogous cases have ruled in favor of plaintiffs seeking to enforce their USERRA rights despite receiving other benefits.

In *Goodman*, for example, which the United States relies on, the plaintiffs asserted individual claims against the defendants arguing that they violated USERRA by failing to properly calculate pension benefits during the period they were on active duty by not taking into account the overtime and night differential they would have received but for being on active duty. 2011 WL 4469513, at *1. During the period of active duty, the plaintiffs were paid their base salaries, and contributions were made to their pension funds based on this rate of pay. *Id*. at *2. The defendants argued in their motion to dismiss that USERRA "contemplate[d] a situation in which an employee was not paid at all during his or her period of military service, and therefore" §

4318(b)(3) did not apply to the plaintiffs. *Id*. at *3 (citation omitted). In rejecting the defendants' argument, the district court reasoned that:

> nothing in the plain language of these provisions . . . support Defendants' claim that Congress intended § 4318(b)(3) to apply only in a situation "in which the employee was not paid at all during his or her period of military service." The statute explicitly directs employers to calculate a reservist's pension benefit "at the rate [of compensation] the employee would have received *but for* the period of service." 38 U.S.C. § 4318(b)(3)(A) (emphasis added). While this statutory provision would certainly be triggered in the event that a servicemember receives no compensation from his civilian employer while on active duty, there is nothing in the plain language of the statute to suggest that the provision is limited to such a circumstance. To the contrary, the most natural reading of this provision is that it includes all aspects of "the employee's compensation" that would have been received "but for" his deployment, regardless of whether some or all of such compensation has in fact been paid. *Id.* § 4318(b)(3).

*Goodman,* 2011 WL 4469513, at *4. The court then went on to discuss legislative history of USERRA, noting that "Congress' intent in passing USERRA was to 'assure civilians called to the colors that they would not be disadvantaged while in service compared to workers whose lives were not similarly interrupted.'" *Id*. at *5 (quoting 140 Cong. Rec. H91135 (daily ed. Sept. 13, 1994) (statement of Rep. Montgomery)). The court thus concluded that legislative intent also weighed "strongly in favor of ensuring that a servicemember's pension is the same as if he had not been called to active duty." *Id*.

This Court finds the reasoning in *Goodman* instructive for Defendants' obligation to calculate pension benefits at the rate the servicemember would have received but for his service, irrespective of compensation during this period of active service. In a similar fashion, nothing in the plain language or legislative history of § 4318(a)(2), which requires a person reemployed to be treated as not having a break in service by reason of the person's period in the armed service and requires that each period in the armed services constitute service for determining benefits, suggests

that these provisions were limited only to those who were unpaid during their service. To the contrary, the plain language of the statute expressly requires the employers to treat the active duty period as service, irrespective of compensation or additional benefits.

In another case that the United States relies on, *Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1111 (W.D. Mich. 2001), the employer and pension plan administrator argued that the employee was not entitled to receive credit during his time of military service, as he would be "double dip[ping]" with other pension rights in contravention to state law and plan provisions. The district court there nonetheless found that USERRA preempted those contrary state law and plan provisions, and that the employee was entitled to his service credit for the period in which he engaged in active military service. *Id*. at 1112. Similarly, that the Guam leave sharing program may give military servicemember government employees greater or additional benefits does not foreclose a violation merely due to asymmetry, especially when § 4318(a)(2)(A) expressly requires that those reemployed not be treated as having breaks in service due to their period of active duty. Moreover, as to Guam's argument that servicemembers who use donated leave would be treated more preferentially than those who take leave without pay, the Court notes that participation in the leave sharing program is voluntary, and servicemembers who take leave without pay have not been statutorily precluded from participating.

To the extent that Defendant Guam argues that servicemember employees or retirees who participated in the leave sharing program waived or released their rights to credited service and contributions during the period they used donated leave, that affirmative defense is not appropriate at this motion to dismiss stage. To be clear, courts have found that a servicemember could waive his or her USERRA rights but have recognized a dichotomy between waiver of substantive and procedural rights under USERRA. *See, e.g., Ziober*, 839 F.3d at 820 (concluding that USERRA

did not prohibit compelled arbitration of claims arising under its provisions, since the plaintiff would lose no substantive right as opposed to procedural right). In explaining the dichotomy, the Sixth Circuit in *Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1106-07 (6th Cir. 2010), reasoned that:

> The rights and benefits listed in § 4303(2) are all substantive rights. They do not deal with the procedure or process for enforcing those rights and benefits. Arguably, applying the definition in § 4303(2) to § 4302, the only "rights" and "benefits" protected in § 4302 are substantive, not procedural, rights; therefore, § 4302(b) does not prevent veterans from waiving their procedural rights because it does not apply to a waiver of a veteran's procedural rights.

The court therefore noted that while servicemembers may freely waive their procedural rights under USERRA, they may only waive substantive rights if the rights received in exchange for the release or waiver were more beneficial than the rights waived or released. *Id*. at 1107–08; *see Vahey v. Gen. Motors Co.,* 2012 WL 9390844, at *3 (D.D.C. Mar. 1, 2012) ("[S]everal courts have found that the 'rights and benefits' protected by the waiver provisions of USERRA are only substantive rights; procedural rights, on the other hand, such as the choice of forum or the length of the statute of limitations, may be freely waived."). The "critical inquiry" was therefore whether the rights provided were more beneficial than the rights waived. *Wysocki*, 607 F.3d at 1107.

Furthermore, in discussing waiver of USERRA rights, the Sixth Circuit in *Wysocki* noted that the legislative history of USERRA "clearly envisioned that veterans would be able to waive their individual USERRA rights by *clear and unambiguous* action." *Id.* at 1108 (citing H.R. Rep. No. 103–65, at 20 (1993)) (emphasis added). The court therefore found that the release signed by the servicemember waiving all claims and actions he might have against his employer as a valid release, because he received $6,000 in exchange for it, he was instructed in capital letters to consult with an attorney before singing the release, and the release used clear and unambiguous language.

*Id*. at 1104, 1108. The district court in *Vahey,* in contrast, could not conclude that the release signed by the plaintiff releasing his employer from "all claims, grievances, lawsuits, demands, and causes of action, known or unknown" arising from his employment was valid at the motion to dismiss stage. *Vahey*, 2012 WL 9390844, at \*4-5. The court could not conclude that the plaintiff unambiguously "weighed the benefits of his USERRA rights against the severance package and chose the more beneficial arrangement[,]" especially since the plaintiff was not explicitly on notice that his USERRA rights were among those rights waived in the release. *Id*. at 5. The court also highlighted that "USERRA intentionally creates an especially high standard for employers reemploying veterans[,]" and that "[f]or § 4302(b) of USERRA to be meaningful in its protections of veterans; rights, a veteran's waiver of his rights must be clearer and more specific than in this [r]elease." *Id*. at \*4, 6.

Similarly, at this stage in litigation, the Court cannot conclude that the servicemembers named in the complaint consciously and unambiguously waived their USERRA rights in the belief that what they were receiving under the leave sharing program was more beneficial than their statutory rights. No explicit language was provided for in the leave sharing program statute that a participant was waiving his or her USERRA rights by using donated leave, such that participation cannot constitute waiver or release as a matter of law. Furthermore, no evidence exists on the face of pleadings demonstrating that Defendants reached out to the servicemembers informing them that their USERRA rights would be waived by using donated leave. Nor is it clear on the face of the pleading that the benefits of the servicemembers' salaries under the leave sharing program outweigh the benefits of receiving pension compensation. These require factual determinations not

appropriate at a motion to dismiss stage.[6] Thus, Defendant Guam's waiver defense is not

appropriate at this stage.

### 3. Whether the United States' claim on behalf of the five servicemembers are barred by statute of limitations.

When USERRA was enacted in 1994, claims under the act were generally subject to the four-year default statute of limitations pursuant to 28 U.S.C. § 1658(a). *Middleton v. City of Chicago*, 578 F.3d 655, 660-61 (7th Cir. 2009). On October 10, 2008, Congress amended USERRA through enactment of the Veterans' Benefit and Improvement Act of 2008 ("VBIA") to eliminate the statute of limitations for USERRA claims, providing: "[i]f any person seeks to file a complaint or claim with the Secretary [of Labor] . . . under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327(b).

Guam argues that the United States claim on behalf of some of the members is barred in whole or in part because (1) the claims accrued when the employees or retirees used the leave sharing program and thus had constructive knowledge of the denial, and (2) the VBIA does not apply retroactively. (*See* Guam Mot. 13.) Guam argues that some of the claims accrued prior to October 2008 and are therefore barred. (*Id*.) In contrast, the United States argues that the cause of action accrued or will accrue upon retirement—all of which occurred post-VBIA for the servicemembers named in the complaint. (Opp'n Br. to Guam 10.) Moreover, it argues that USERRA claims that were alive at the time of the VBIA's passage cannot be time barred. (*Id*. at

---

[6] Counsel for Defendant Guam presented a PowerPoint during oral arguments to highlight the greater monetary benefits that a servicemember coups from participating in the leave sharing program as is, as opposed to taking leave without pay. While the PowerPoint was informative, the Court cannot consider the facts in the PowerPoint at this stage. *Ritchie*, 342 F.3d at 908 (noting that in ruling on a motion to dismiss, the court may only consider the pleadings and limited materials).

12.)

The Court will first address the issue as to when servicemembers' USERRA claims accrued, because if the claims accrued or will accrue upon retirement, this Court need not determine whether the VBIA applies retroactively. The earliest that one of the servicemembers' claims would have accrued would be in 2018. (*See* Compl. ¶ 26.) Here, the court finds the case law cited by the United States persuasive. In *Leonard v. United Airlines, Inc.*, the Seventh Circuit cited to several district court and a Fourth Circuit case to note that "[t]here is overwhelming authority for the proposition that a Veterans' Act claim for lost pension benefits does not accrue until the benefits vest at retirement." 972 F.2d 155, 157 (7th Cir. 1992) (citations omitted). The court also noted that this was also the accrual rule the Department of Labor "applies whether or not the veteran knows in advance that his claimed pension benefits will not be paid." *Id.* at 158 (citations omitted). Despite recognizing that the rule could result in hardship on employers forced to defend claims brought long after the relevant events took place, "the interests of veterans weigh heavily in the scales: '[t]his legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need . . . .'" *Id.* (citations omitted). In *Corbin v. Southwest Airlines, Inc.*, 2018 WL 4901155, at *12 (S.D. Tex. 2018), the district court also concluded that the time limits on the plaintiff's pension benefits-related claims under USERRA start to run when the plaintiff retires.

Yet Defendant Guam relies heavily on *Witt v. Metropolitan Life Insurance Co.*, 772 F.3d 1269 (11th Cir. 2014) in its reply brief, where the Eleventh Circuit determined that the claim accrued at the time plaintiff's claim was rejected. (*See* Guam Reply Br. 4-5.) In *Witt*, the plaintiff stopped receiving disability benefits in 1997, but did not challenge the termination of his benefits until 2009, nearly 12 years later. *Witt*, 772 F.3d at 1271-72. The court of appeals found that his

claim was time-barred, relying on three other circuit cases, including the Ninth Circuit, where the courts "squarely concluded that an ERISA cause of action accrues—and the limitations period begins to run—when the claimant has reason to know that the claim administrator has clearly repudiated the claim or amount sought." *Id*. at 1276 (citations omitted); *see Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 750–51 (9th Cir. 2014) ("Under federal law, an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." (quotations omitted)). But *Witt* is distinguishable because the plan there was governed by ERISA—not USERRA—and dealt with disability benefits that the claimant could have already received at the time of denial. *Id.* at 1271-72.

Furthermore, while Guam's reliance on *Middleton* and *Baldwin* are persuasive in regards to retroactivity, those cases are not instructive here on the issue of when a USERRA cause of action accrues. In *Middleton*, 578 F.3d at 662-63, the Seventh Circuit concluded that the VBIA did not retroactively remove the statute of limitations for USERRA cases and therefore plaintiff's claim was time-barred. It reasoned that "it is well established that a court should not apply a newly enacted statutory provision retroactively unless Congress has clearly mandated such an extension," and that the VBIA says nothing about whether § 4327(b) applies retroactively. *Id*. Thus, "the absence of any such express language in the text indicates that Congress chose not to do so." *Id*. at 662 (citation omitted). However, in *Middleton*, the servicemember brought a claim in 2007, nearly thirteen years after he was allegedly not hired for two positions in 1994 due to his military service. *Id*. at 657. The claim had nothing to do with pension benefits under USERRA. Relying on the reasoning in *Middleton*, the Fourth Circuit concluded that § 1658(a)'s four-year statute of limitations applied to plaintiff's claims and that § 4327(b) did not apply retroactively, and therefore

found that plaintiff's claim was time-barred. *Baldwin v. City of Greensboro*, 714 F.3d 828, 837–38 (4th Cir. 2013). But *Baldwin* also had nothing to do with pension benefits, and rather dealt with a failure to retain and reemploy under USERRA. *See id*. at 832.

Thus, even assuming, without deciding, that the VBIA does not apply retroactively to eliminate the statute of limitations for USERRA claims, the Court finds that the United States' USERRA claim on behalf of the servicemembers is not clearly barred on the face of the complaint by statute of limitations. Guam's statute of limitations affirmative defense is insufficient to support granting the motion to dismiss.

### 4. *Whether the United States' claim on behalf of the five servicemembers are barred by laches.*

Defendant Guam also argues that based on laws and regulations of the leave sharing program, the government employees who participated in the program knew or should have known that retirement credit would be unavailable for those time periods when they used donated leave. (Guam Mot. 14.) Thus, Guam argues that the face of the complaint shows that the allegedly aggrieved individuals delayed beyond the time fixed by most statute of limitations. (*Id.*)

"Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 950-51 (9th Cir. 2001) (citations omitted). To demonstrate laches, a defendant must prove both (1) an unreasonable delay by the plaintiff and (2) prejudice to itself. *Couveau v. Am. Airlines, Inc*., 218 F.3d 1078, 1083 (9th Cir. 2000) (citations omitted). "While laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law." *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002). Thus, "[i]f the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id*. (citation omitted).

Here, as discussed previously, case law supports that the servicemembers' claims arise when their benefits vest upon retirement. Thus, Defendant Guam cannot demonstrate undue delay, where the statute of limitations has not yet expired. Guam's reliance on *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408–09 (6th Cir. 2002), a trademark infringement case, is also misplaced because there, the court found a rebuttable presumption of laches given that the suit was filed beyond the statute of limitations period. As to Guam's argument that it suffered prejudice due to the delay—namely, that "the Payroll Division in the Department of Administration maintains leave records and does not have a records retention program that would allow Guam to verify all of the individuals' claims[,]" (Guam Mot. 14) —the Court finds that this argument is a statement outside of the pleadings. Defendant Guam cannot demonstrate a successful laches affirmative defense that is clear from the face of the complaint. The Court therefore DENIES Defendant Guam's motion to dismiss.

### III.     MOTION FOR A MORE DEFINITE STATEMENT

Alternatively, Defendant Guam moves the Court for an order requiring the United States to provide a more definite statement of its complaint under Federal Rule of Civil Procedure 12(e). (Guam Mot. 15–16.)

#### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Furthermore, "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." *Id*. "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Sagan v. Apple Comput.*,

*Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (citation omitted). Such motions are generally "viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules[,]" as "[p]arties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *Id*. (citations omitted). "A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made" but "is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Id*. (citations omitted). "Whether to grant a Rule 12(e) motion is within the discretion of the trial court." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (citation omitted).

### B. Discussion

Defendant Guam argues that it needs a more definite statement because it "cannot reasonably respond to the question of whether the individuals have received a greater benefit by virtue of taking donated leave." (Guam Mot. 16.) Moreover, Guam alleges that the complaint is not entirely clear as to which claims are time-barred or subject to laches, and therefore a more definite statement is needed. (*Id*.)

Guam's argument, however, relies on the false assumption that in order to allege a USERRA violation, "the United States must plausibly allege that military service member government employees using donated leave did not receive a right or benefit more beneficial than the one they gave up." (*Id*. citing § 4302(a)). The United States need not allege that the servicemembers using donated leave did not receive a greater right or benefit. It need only allege that a right or benefit is being violated under USERRA, which it properly does so by alleging that Defendants' implementation of the leave sharing program results in government employee servicemembers losing their right to credited service and retirement contributions for the periods

they use donated leave while on active duty. Moreover, even though some of the details of the claim are omitted, the substance of the United States' claim has been alleged—putting Defendants on notice of the claim. The details that Defendant Guam seeks are those that can be obtained through discovery. Accordingly, Defendant Guam's alternative motion for a more definite statement is DENIED.

### IV.    CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Guam's motion to dismiss, or alternative motion for a more definite statement, and DENIES Defendant GGRF's motion to dismiss.

IT IS SO ORDERED this 30th day of May, 2023.

RAMONA V. MANGLONA
Designated Judge