**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>    v.<br><br>UNITED STATES TERRITORY OF GUAM<br>and THE GOVERNMENT OF GUAM<br>RETIREMENT FUND,<br><br>             Defendants. | Case No. 1:21-cv-00022<br><br>DECISION AND ORDER:<br>(1) GRANTING UNITED STATES'<br>     MOTION TO SUPPLEMENT<br>     THE RECORD (ECF No. 88);<br>(2) GRANTING UNITED STATES'<br>     MOTION FOR SUMMARY<br>     JUDGMENT AS TO LIABILITY<br>     (ECF No. 51);<br>(3) DENYING THE GOVERNMENT<br>     OF GUAM RETIREMENT<br>     FUND'S COUNTER-MOTION<br>     FOR SUMMARY JUDGMENT<br>     (ECF No. 52); and<br>(4) DISMISSING UNITED STATES<br>     TERRITORY OF GUAM'S<br>     MOTION FOR SUMMARY<br>     JUDGMENT AS TO<br>     CLAIMANT'S UNJUST<br>     ENRICHMENT (ECF No. 94) |

      This civil action arises under the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended, 38 U.S.C. § 4301, *et seq*. ("USERRA"). The United States filed this lawsuit on behalf of five service members as well as other potential service members pursuant to 38 U.S.C. § 4323(b), alleging that Defendants United States Territory of Guam ("GovGuam") and the Government of Guam Retirement Fund (the "Fund") violate USERRA when they treat service members who were away on active military duty and subsequently reemployed as having incurred a break in service under Guam's Leave Sharing Program ("LSP"). In addition, the United States alleges GovGuam and the Fund violate USERRA when

they prohibit employer- and employee-side contributions towards the service members' retirement plans when they take leave under the LSP. Before the Court are three motions for summary judgment: (1) the United States' Motion for Summary Judgment as to liability (USA's MSJ, ECF No. 51),[1] (2) the Fund's Counter-Motion for Summary Judgment based on the equitable doctrine of quasi-estoppel (Fund's Counter-MSJ, ECF No. 52),[2] and (3) GovGuam's Motion for Summary Judgment as to the unjust enrichment of one claimant (GovGuam's MSJ, ECF No. 94).[3]

After a hearing was held on the United States' Motion for Summary Judgment and the Fund's Counter-Motion for Summary Judgment and both motions were taken under advisement (Mins., ECF No. 71), the United States filed a Motion for Leave to File Additional Documents to Supplement the Summary Judgment Record. (USA's Mot. Suppl. Record, ECF No. 88.)[4]

---

[1] The United States' Motion for Summary Judgment is supported by a Brief (USA's MSJ Br., ECF No. 51-1), Concise Statement of Undisputed Material Facts (USA's CSUMF, ECF No. 51-2), and Exhibits (ECF No. 51-3). The Fund opposed the United States' Motion for Summary Judgment (ECF No. 52) with its Concise Statement of Material Facts, which includes declarations and exhibits. (Fund's CSMF, ECF No. 52-1.) GovGuam also opposed the United States' Motion (GovGuam's Opp'n to USA's MSJ, ECF No. 53) and joins in the Fund's Opposition and Counter-Motion. (GovGuam's Joinder, ECF No. 54.) The United States replied to both the Fund's and GovGuam's Oppositions. (ECF No. 56.)

[2] The Fund's Counter-Motion is supported by its Concise Statement of Material Facts. (Fund's CSMF, ECF No. 52-1.) The United States opposed the Fund's Counter-Motion (USA's Opp'n to Fund's Counter-MSJ, ECF No. 56), to which the Fund filed its reply (ECF No. 63). GovGuam also joined the Fund's reply. (GovGuam's Joinder to Fund's Reply, ECF No. 64.)

[3] GovGuam supports its Motion for Summary Judgment as to unjust enrichment with a Concise Statement of Undisputed Material Facts (GovGuam's CSUMF, ECF No. 95) and Exhibits (95-1–95-7). The United States opposes the Motion (USA's Opp'n to GovGuam MSJ, ECF No. 100) to which GovGuam replied (GovGuam's Reply in Support of MSJ, ECF No. 102). There was no hearing on GovGuam's Motion for Summary Judgment based on unjust enrichment. Subsequently, GovGuam filed a Notice of Errata, which fixed a typographical error in its Reply. (ECF No. 103.)

[4] The United States supports its Motion to Supplement the Record with a Brief in Support. (USA's Suppl. Br., ECF No. 88-1.) The Fund opposes the Motion to Supplement the Record (Fund's Opp'n to Mot. Suppl., ECF No. 98), which GovGuam joins (ECF No. 99). The Fund supports its Opposition with exhibits and declarations. (ECF Nos. 98-1–98-3.) GovGuam supports its joinder with a summary report and claimant declarations. (ECF Nos. 99-1–99-6.) The United States replied (ECF No. 101) and attached an email exhibit (ECF No. 101-1).

Neither party sought a hearing for GovGuam's Motion for Summary Judgment and it was therefore submitted on the briefs.

The Court has reviewed and considered the parties' filings, the applicable law, and counsels' oral arguments. For the following reasons, the Court (1) GRANTS the United States' Motion to Supplement the Record; (2) GRANTS the United States' Motion for Summary Judgment as to Defendants' liability; (3) DENIES the Fund's Counter-Motion for Summary Judgment based on the equitable doctrine of quasi-estoppel; and (4) DISMISSES GovGuam's Motion for Summary Judgment as to the unjust enrichment of one claimant for lack of jurisdiction.

## I.     BACKGROUND

### A.  Guam's Leave Sharing Program

The Guam Fire Department ("GFD") and Guam's Department of Education ("GDOE") are agencies of GovGuam and individuals working there are GovGuam employees. (USA's CSUMF ¶¶ 2-3; Fund's CSMF ¶¶ 2-3.) Beginning in 1993, GovGuam offered its employees a choice of retirement plans, including: Defined Benefit Plan, Defined Contribution Retirement System 401(a) Plan, Defined Benefit 1.75 Retirement System Plan, and Deferred Compensation (457) Plan. (USA's CSUMF ¶ 4; Fund's CSMF ¶ 4.)

The Department of Administration ("DOA") is also a GovGuam agency. (USA's CSUMF ¶¶ 5, 7; Fund's CSMF ¶¶ 5, 7.) DOA and GDOE are responsible for payroll actions for GovGuam employees, and through these payroll actions, the agencies make employer-side contributions to GovGuam employees' retirement pension funds. (USA's CSUMF ¶¶ 5, 7; Fund's CSMF ¶¶ 5, 7.) The DOA and GDOE do not make employer-side pension contributions for the time that employees use donated leave from the LSP for military service. (USA's CSUMF

¶¶ 6, 8; Fund's CSMF ¶¶ 6, 8.)

The Fund administers the pension fund for GovGuam employees and is responsible for collecting pension contributions. (USA's CSUMF ¶ 9; Fund's CSMF ¶ 9.) The Fund blocks all contributions made by employees for the time an employee used donated leave for military service and instead returns the funds. (USA's CSUMF ¶ 10; Fund's CSMF ¶ 10 (partially disputed by the parties).)[5] The Fund is also responsible for calculating and verifying service credit towards retirement. (USA's CSUMF ¶ 11; Fund's CSMF ¶ 11.) However, the Fund does not recognize any service credit for the time an employee uses donated leave for military service. (USA's CSUMF ¶ 12; Fund's CSMF ¶ 12.)

The LSP is an employee benefit that provides assistance to employees who need to take extended periods of absence from their employments for personal reasons. (USA's CSUMF ¶ 13; Fund's CSMF ¶ 13.) The employees can use donated leave from a leave donor to remain in a paid leave status. (USA's CSUMF ¶ 13; Fund's CSMF ¶ 13 (disputed as the Fund asserts that there is not a leave bank for donated leave and each application for donated leave is specific to a leave donor and leave recipient).)[6] Military service is an accepted personal reason for employees to use donated leave from the LSP. (USA's CSUMF ¶ 14; Fund's CSMF ¶ 15.)

Employees' time spent on donated leave from the LSP may not count towards retirement service credit for any GovGuam employee, including service members. (USA's CSUMF ¶ 15;

---

[5] The Fund asserts that this fact is disputed as the Fund "does not block all contributions made for the time an employee used donated leave for military service." (Fund's CSMF ¶ 10 (citing ECF No. 51-3 at 17, 26, 32; USA's CSUMF ¶ 6, 8).) The Court finds that the Fund's cited exhibits do not dispute the fact asserted by the United States. Therefore, the Court considers this fact undisputed. *See* Fed. R. Civ. Proc. 56(e)(2).

[6] The Fund disputes this fact citing to the Declarations of Gilbert F. Galang and Kathryn M. C. Diaz. (ECF No. 52-1 at 15-18, 34-37, 59-61). Both Declarations support the Fund's assertion. (*Id.* at 16, 35 ("The government of Guam's Leave Sharing program does not maintain a leave bank for donated leave.").) Based on the express language of Guam law, the Court finds the LSP is a voluntary program that requires a voluntary leave donor to transfer leave to a specific recipient, not to a leave bank. 4 G.C.A. § 4109.2(b)(1). Furthermore, nowhere in the Leave Sharing Procedure at Appendix G is there a reference to a leave bank. However, this fact is not material.

Fund's CSMF ¶ 15.) Any pension contributions made while an employee is using donated leave for military service will be returned to the employer or employee (USA's CSUMF ¶ 16; Fund's CSMF ¶ 16.)

### B. The Claimants (LSP Participants)

Alan Torre was employed as a firefighter for GFD from 1992 until 2020 and was an active participant in the Defined Benefit Plan. (USA's CSUMF ¶ 17; Fund's CSMF ¶ 17.) Torre is a former Army National Guardsman who utilized GovGuam's LSP for active duty from March 17, 2007 until December 8, 2007; he received honorable discharge and GFD reemployed him after deployment, and he did not receive service credit or pension benefits for a period of time after GFD reemployed him. (USA's CSUMF ¶ 18; Fund's CSMF ¶ 18 (partially disputed for the amount of pay periods he received donated paid leave and for which years).)[7] In his deposition for this case, Torre testified that the only information he knew about shared leave was what the payroll clerk told him or his supervisor. (USA's Suppl. Br. 14-15.) Torre testified that two weeks before his retirement, "Retirement told me I was not able to retire." (*Id.* at 21.) He thereafter inquired why after two years of being told he could retire in 2019, he was told that he had to work longer. (*Id.*) The Fund informed Torre that his participation in the LSP impacted his retirement service credit. (*Id.* at 22.) Torre had to work an extra five months before he became eligible to retire. (*Id.* at 22-23.) He wants the Fund to give him the nine months of retirement service credit that he claims to be entitled to. (*Id.* at 28.) When asked if Torre read the personnel rules and regulations about leave sharing, he said that he could not find any online despite searching. (*Id.* at 24.) Torre also testified that both he and his employer contributed to the Fund for his retirement plan while on the LSP, but that prior to retiring, a clerk gave him a check for

---

[7] The Fund disputes this fact stating that Torre received donated paid leave for 36 pay periods. (Fund's CSMF ¶ 18.) The Court does not find this to be a material fact when resolving the issue of liability only.

the contributions he made. (*Id.* at 28.) When the Fund returned his employee contributions, Torre testified that he told the clerk to keep the check and requested his time in service credit, but the Fund informed him that could not be done. (*Id.* at 29-30.) Ultimately, he cashed the check before he lost it. (*Id.* at 30.)

Andrew Quinata has been employed as a firefighter for GFD since 1992 to the present and is an active participant in the Defined Benefits Plan. (USA's CSUMF ¶ 19; Fund's CSMF ¶ 19.) Quinata is a former Air National Guardsman who utilized GovGuam's LSP for active duty during 2007 to 2009, 2012, and 2016. (USA's CSUMF ¶ 20; Fund's CSMF ¶ 20.) Quinata did not receive retirement service credit or pension benefits for those periods. (USA's CSUMF ¶ 20; Fund's CSMF ¶ 20.) Quinata was unaware that participation in the LSP would forfeit his USERRA benefits. (USA's CSUMF ¶ 21; Fund's CSMF ¶ 21 (disputed by the parties).)[8] In his deposition for this case, Quinata was asked if he had ever seen the LSP statute, to which he responded no. (USA's Suppl. Br. 36.) He also stated that no one had ever gone over the LSP with him. (*Id.* at 37.) Quinata testified that the payroll clerk informed him about shared leave. (*Id.* at 38-39.) The payroll clerk would inform Quinata that he was running out of leave and would provide a leave sharing document for him to fill out after which the payroll clerk said he would take care of the rest. (*Id.* at 39, 41.) When Quinata inquired at the Fund about his time in service, he was informed that he was short about two and a half years in service because he had used the LSP. (*Id.* at 44-46.) Quinata was informed that because the Fund is not crediting him for the time that he used donated leave while on active military duty, he will draw a lower pension annuity for the rest of his life. (*Id.* at 45-46.)

---

[8] The Fund disputes this on the basis of the Declaration by Diaz. (Fund's CSMF ¶ 21.) As addressed in greater detail below, the Court finds that Diaz's Declaration does not sufficiently dispute Quinata's unawareness that participation in LSP would forfeit his USERRA benefits.

Jesse Cruz has been employed as a firefighter for GFD since 1992 to the present and is an active participant in the Defined Benefits Plan. (USA's CSUMF ¶ 22; Fund's CSMF ¶ 22.) Cruz is an Air National Guardsman who utilized GovGuam's LSP for active duty during 2012, and he did not receive retirement service credit or pension benefits for that period of time. (USA's CSUMF ¶ 23; Fund's CSMF ¶ 23.) Cruz was unaware that participation in the LSP would forfeit his USERRA benefits. (USA's CSUMF ¶ 24; Fund's CSMF ¶ 24 (disputed by the parties).) [9] In his deposition testimony for this case, Cruz testified that he did not look at the personnel rules and regulations regarding LSP. (USA's Suppl. Br. 86.) He did not know the details about the LSP because his payroll clerk "took care of all of that." (*Id.* at 87.)

Raymond San Nicolas was employed as a firefighter for GFD from 1992 until 2018 and is a former Air National Guardsman who utilized GovGuam's LSP for active duty during 2005, 2006-2007, 2008, and 2012. (USA's CSUMF ¶¶ 25-26; Fund's CSMF ¶¶ 25-26.) Cruz did not receive retirement service credit or pension benefits for those periods. (USA's CSUMF ¶ 26; Fund's CSMF ¶ 26.) In his deposition for this case, San Nicolas testified that he applied for leave under the LSP through his payroll office. (USA's Suppl. Br. 98.) His contributions to the Fund were taken out of his pay while on military orders and leave sharing. (*Id.* at 101.) However, the Fund refunded those contributions. (*Id.* at 101-02.) An agent at the Fund initially informed San Nicolas in 2015 about the pay he would receive and his years of credited service, which included credit for years of service during his leave sharing. (*Id.* at 102.) Years later in 2018, he received contrary information. (*Id.* at 102-03.)

Frederick Guzman has been employed by GDOE since 1996 to the present and is an active participant in the Defined Benefit 1.75 Plan. (USA's CSUMF ¶ 27; Fund's CSMF ¶ 27.)

---

[9] The Fund disputes this on the basis of the Declaration by Diaz. (Fund's CSMF ¶ 24.) As addressed in greater detail below, the Court finds that Diaz's Declaration does not sufficiently dispute Cruz's unawareness that participation in LSP would forfeit his USERRA benefits.

Guzman is an Air National Guardsman who utilized GovGuam's LSP for active duty during 2012 and 2018. (USA's CSUMF ¶ 28; Fund's CSMF ¶ 28; GovGuam CSUMF ¶ I.B (GovGuam asserts the period of time is to August 2023, which is not disputed).) Guzman's leave transfer request was approved. (GovGuam CSUMF ¶ III.B.) Guzman did not receive service credit or pension benefits for those periods. (USA's CSUMF ¶ 28; Fund's CSMF ¶ 28; GovGuam CSUMF ¶ III.A.) The cash benefit of Guzman's leave under the LSP is $42,993.73. (GovGuam CSUMF ¶ IV.A (undisputed).) Guzman refuses to return the LSP cash benefits. (*Id.* ¶ V.) In his deposition for this case, Guzman testified that he never read the GovGuam personnel rules and regulations. (USA's Suppl. Br. 59.) He further stated that when he turned in his leave request form for the very first time, he turned it in to the secretary of the school that employed him, who then called payroll. (*Id.* at 62.) He learned about shared leave from the secretary. (*Id.* at 64.) When the Defined Benefit 1.75 program was launched, Guzman learned from a person at the Fund that his credit years is not the same as the period from when he started working in 1996. (*Id.* at 66.) A person from the Fund informed Guzman that he was short on retirement credits and suggested possible reasons but did not pinpoint the specific reason. (*Id.*) He subsequently asked someone from payroll why he is short on years and was told maybe it is because he went on military leave. (*Id.* at 67.) He still did not understand why he would be short if he went on military leave. (*Id.*)

## II. LEGAL STANDARDS

### A. Supplemental Briefing

Pursuant to CVLR 7(h), no supplemental briefing shall be filed without leave of the Court. Federal Rule of Civil Procedure 56(e)(1) dictates that if a party fails to properly support an assertion of fact or address another party's assertion of fact, the court may "give an opportunity to properly support or address the fact."

**B. Summary Judgment Pursuant to Federal Rule of Civil Procedure 56**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 322.

A party who moves for summary judgment who bears the burden of proof at trial must produce evidence that would entitle him to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 480. In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). "If a genuine dispute of material fact exists,

a court must deny both motions." *Fed. Trade Comm'n v. Am. eVoice, Ltd.*, 242 F. Supp. 3d 1119, 1121 (D. Mont. 2017) (citation omitted). However, if there is no dispute of material fact and only one party is entitled to judgment as a matter of law, a court may grant summary judgment as to that party only. *E.g.*, *Johnson v. Diaz*, 339 F. Supp. 60, 65 (C.D. Cal. 1971) (granting one party's motion for summary judgment and denying other party's motion).

At the summary judgment stage, "[a] plaintiff moving for summary judgment is not obligated to negate affirmative defenses, but an affirmative defense will negate summary judgment where each element of the affirmative defense is supported by summary judgment evidence." *McCollough v. Johnson, Rodenberg & Lauinger*, 587 F. Supp. 2d 1170, 1176 (D. Mont. 2008) (citing *Garza v. Gonzales*, No. 13-05-200-CV, 2006 WL 3317732, at *4 (Tex. App. Nov. 16, 2006)).

> If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden with affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case.

*See Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1147 (C.D. Cal. 2001) (citing *Celotex*, 477 U.S. at 325).

## III. DISCUSSION

The Court addresses each motion starting with the United States' Motion to Supplement the Record. The Court grants the United States' Motion to Supplement the Record because the United States was diligent, and the additional evidence of the claimants' depositions was not at its request. The Court also accepts the Defendants' supplemental records as well. Next, the Court grants the United States' Motion for Summary Judgment and finds that GovGuam's LSP prohibition does not limit the service members' USERRA benefits because the LSP prohibition is preempted, Defendants did not sufficiently support their affirmative defense of waiver, and

the service members are entitled to their USERRA benefits. Next, the Court finds that the Fund is not entitled to summary judgment based on quasi-estoppel because the United States or claimants are not receiving an unconscionable advantage nor is the Fund or GovGuam receiving an unconscionable disadvantage. Finally, the Court dismisses GovGuam's Motion for Summary Judgment for unjust enrichment as to Guzman because it does not have jurisdiction.

## A. United States' Motion to Supplement the Record

As an initial matter, the Court grants the United States' Motion for Leave to Supplement the Record. The Fund opposes the United States' Motion to Supplement the Record and asserts that if the Court were to grant the Motion that the Fund should also be able to submit additional documents to complete the record as well. (Fund's Opp'n to Mot. Suppl. 6.) GovGuam noticed depositions of the five claimants about a month before the close of discovery and *after* briefing closed on both the United States' Motion for Summary Judgment and GovGuam's Motion (USA's Suppl. Br. 3; Third Am. Scheduling Order 2, ECF No. 73 ("All discovery must be scheduled so as to be completed by January 4, 2024").)

Federal Rule of Civil Procedure 56(e)(1) dictates that if a party fails to properly support an assertion of fact or address another party's assertion of fact, the court may "give an opportunity to properly support or address the fact." The Ninth Circuit has affirmed a district court's denial of a motion to supplement the summary judgment record based on a lack of diligence from the moving party. *Stucky v. Dep't of Educ.*, 337 Fed. Appx. 611, 613 (9th Cir. 2009). Thereafter, Ninth Circuit district courts have analyzed the diligence of the moving party when determining whether to grant or deny a motion to supplement. *See, e.g.*, *Dentists Ins. Co. v. Yousefian*, Case No. C20-1076RSL, 2023 WL 4106220, at *7 (citing *Stucky*, 337 Fed. Appx. at 613)).

In this instance, the United States was diligent. The depositions were not at its own request but became available upon the Defendants' requests. Because the depositions properly address material issues of fact about the claimants' waiver, or lack of a waiver, the Court grants the United States' Motion to Supplement the Record. In addition, the Court accepts the Fund's and GovGuam's supplement of the record as well. All parties have had ample time to brief the legal issues and argue before the Court, and because the Court accepts the supplemental record from all parties, any additional legal arguments submitted with the supplemental briefs are accepted for consideration. The Court now turns to the pending substantive motions.

**B. United States' Motion for Summary Judgment**

The United States argues that the Court should grant its motion for summary judgment on liability because Defendants violated USERRA in three ways: (1) Defendants failed to make employer-side contributions to pension accounts for reemployed service member-employees utilizing the LSP for military service; (2) the Fund rejected service members' employee-side contributions to pension accounts when service members utilized the LSP for military service; and (3) the Fund failed to provide retirement service credit time to reemployed service members that utilized the LSP for military service. (USA's MSJ Br. 9-10.) Defendants' sole justification for their actions is their unequivocal reliance on Guam's territorial statute at 4 G.C.A. § 4109.2(b)(3), the LSP's prohibition against the recipient employee using the paid leave for credit towards retirement. (*Id.* at 10.)

The United States contends USERRA supersedes the LSP's prohibition against crediting retirement service benefits to service members who are transferred leave. Although the LSP confers paid leave benefits to the service members, the United States still contends that as a matter of law, USERRA preempts that portion of Guam's statute that deprives service members of the three minimal rights under USERRA. (*Id.* at 15.) Further, as a matter of fact, the United

States maintains that there has been no waiver by the service members of their minimal USERRA rights. (*Id.* at 19.)

The Fund argues the United States' Motion should be denied because there exist genuine disputes of material facts. Specifically, the Fund contends that the critical inquiry at issue is "whether the rights to service credits under USERRA (and their value) are more or less beneficial than the value of rights to service credits and other benefits under Guam law." (Fund's Counter-MSJ 17.) The Fund further argues that the Court must consider not just the application of Guam's LSP, but also the application of its alternative as set out in Guam law at 4 G.C.A. § 8137.2. (*Id.*) Lastly, the Fund contends "[p]reemption requires a determination of the beneficial value of the rights conferred by federal vs. Guam laws." (*Id.* at 22.) GovGuam joins the Fund's Opposition. (GovGuam's Joinder Reply 1.) The Court rejects the Fund's contention that the Court must consider alternative Guam law on retirement benefits for service members, such as the employees on the active duty provision at 4 G.C.A. § 8137.2, in determining whether the LSP's prohibition against credit towards retirement violates USERRA because the LSP operates on its own in providing both a benefit and a deprivation of retirement rights.

### 1. *Service Members' Rights Under USERRA*

Congress enacted USERRA for the purpose of encouraging service in the uniformed services by eliminating or minimizing disadvantages to civilian careers and employment resulting from such service; minimizing disruption to service members' lives, employers, fellow employees, and their communities; and prohibiting discrimination against service members. 38 U.S.C. § 4301(a). "USERRA establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects. In other words, an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA." 20 C.F.R. § 1002.7(a). "If an employer provides a

benefit that exceeds USERRA's requirements in one area, it cannot reduce or limit other rights or benefits provided by USERRA." *Id.* § 1002.7(c). "If the employer provides additional benefits such as full or partial pay when the employee performs service, the employer is not excused from providing other rights and benefits to which the employee is entitled under [USERRA]." *Id.* § 1002.151.

USERRA defines a "benefit" or "rights and benefits" as: "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan or practice and includes rights and benefits under a pension plan . . . ." 38 U.S.C. § 4303(2).

USERRA contains a supremacy clause at 38 U.S.C. § 4302(b) that addresses rights and benefits conferred under the chapter:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

Section 4302(a) of USERRA is a limitation on the scope of federal preemption established by § 4302(b). Section 4302(a) states:

> Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter *that establishes a right or benefit that is more beneficial to, or is in addition to,* a right or benefit provided for such person.

*Id.* § 4302(a) (emphasis added).

Section 4318 covers service members' reemployment rights arising under employee pension benefit plans. *Id.* § 4318(a)(1)(A). For a right provided under an employee pension benefit plan or a right provided by federal or state law governing pension benefits for government

employees, "the right to pension benefits of a person reemployed under [chapter 38] shall be determined under [§ 4318]." 38 U.S.C. § 4318(a)(1)(A).

"A person reemployed under [chapter 38] shall be treated as not having incurred a break in service with the employer or employers maintaining the [employee pension benefit] plan by reason of such person's period or periods of service in the uniformed services." *Id.* § 4318(a)(2)(A). Not only does USERRA prohibit the treatment of reemployed service members as having incurred a break in service, but it also requires employers reemploying service members to maintain the employee's pension plan in the same manner and extent as to other employees during the period of service. *Id.* § 4318(b)(1). USERRA expressly states:

> Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

*Id.* § 4318(a)(2)(B). Finally, USERRA allows an employee to make employee-side contributions at the amount the service member would have been permitted to make if not for their service:

> A person reemployed under this chapter shall be entitled to accrued benefits pursuant to subsection (a) that are contingent on the making of, or derived from, employee contributions or elective deferrals . . . only to the extent the person makes payment to the plan with respect to such contributions or deferrals. No such payment may exceed the amount the person would have been permitted or required to contribute had the person remained continuously employed by the employer throughout the period of service described in subsection (a)(2)(B). Any payment to the plan described in this paragraph shall be made during the period beginning with the date of reemployment and whose duration is three times the period of the person's service in the uniformed services, such payment period not to exceed five years.

Therefore, under USERRA, reemployed service members explicitly have rights that include: (1) the period of time during which they served will not be treated as a break in service with the employers maintaining their pension benefit plan; (2) employer contributions to their employee pension benefit plan shall be in the amount of "any employer contribution for the

person in the same manner and to the same extent the allocation occurs for other employees during the period of service[;]" and (3) employee contributions upon reemployment in the amount permitted but for their service. *See* 38 U.S.C. § 4318(b)(1).

### 2. Service Members' Rights Under Guam Law

Guam law provides multiple benefits to employees and service members pertaining to leave. All government of Guam employees who are also in the military reserves or are National Guard members are entitled to fifteen days of military *paid leave* within a fiscal year when they are called on for active military duty. 4 G.C.A. § 4119(a)-(b). The provisions of § 4119 are retroactive to October 1, 2012. Section 4119 does not affirmatively deprive a service member of any retirement benefit. Therefore, 4 G.C.A. § 4119(a)-(b) establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person under USERRA. Section 4119 does not take away from service members' pension rights when it provides leave with pay for military service, which is not mandated under USERRA.

After exhaustion of this fifteen-day military paid leave, service members must elect annual leave, compensatory-time accrued, or unpaid leave when called on for active military duty. *Id.* § 4119(b).

Under § 8137.2, GovGuam funds both employer- and employee-side retirement contributions for military service member employees who take *unpaid leave* while on active duty. *Id.* § 8137.2. Specifically, Guam law provides as follows:

> **Employees on Active Duty.** The government shall pay the *employer's and employee's* shares for *Retirement Fund contributions, group health insurance premiums, and group life insurance premiums* for all officers and other employees of the government of Guam *who are on leave without pay and on active duty* with the Guam National Guard or the reserve components of any of the Armed Services of the United States. All agencies and departments of the government of Guam shall fund, from their respective annual budgets, the contributions for *retirement, health insurance, and life insurance* authorized by this section.

*Id.* (emphasis added). Military service members are also given retirement credit for their period of active military service if discharged under conditions other than dishonorable and reemployed by Guam. *Id.* § 8108(b). Therefore under §§ 8108(b) and 8137.2, service members who elect to take unpaid leave receive both retirement credit and employer-side contributions as they are entitled to under USERRA, and the additional benefits of GovGuam-funded employee contributions, group health insurance premiums, and group life insurance premiums during their period of military service. Again, because §§ 8108(b) and 8137.2 do not take away any of the minimum rights guaranteed to service members by USERRA and only add the benefits identified, these Guam statutory provisions establish a right or benefit that is more beneficial than, or is in addition to, a right or benefit provided for such person under USERRA.

Finally, through GovGuam's LSP, a GovGuam employee may voluntarily use donated leave generally of up to ninety days instead of taking unpaid leave. *Id.* § 4109.2(b)(4). During this period, the recipient of donated leave—in this case, the service member—receives pay based on either the recipient or donor's rate, whichever is lower. *Id.* § 4109.2(b)(1). By using donated leave under the LSP, the recipients are not permitted to use the period of donated leave as credit towards retirement. *Id.* § 4109.2(b)(3). "Leave may not be transferred to another employee if as a recipient that employee intends to use it for credit towards retirement," and "[i]n no event shall transferred leave be converted to cash or retirement credit by the person to whom it is transferred." 4 G.C.A. § 4109.2(b)(3). Therefore, under Guam's LSP statute, service members receive the benefit of leave *with pay*, which is not a USERRA benefit. However, in exchange for receiving paid leave under the same law, GovGuam does not make employer-side contributions, permit employee-side contributions, nor count the service member's leave as credit towards retirement—the three benefits protected under USERRA when a service member is on unpaid leave.

### 3. *USERRA Supremacy Provision and Waiver of USERRA Rights*

The United States contends that USERRA supersedes Guam's LSP, and Defendants contend that Guam's LSP is more beneficial and therefore not preempted. Furthermore, the United States argues that none of the claimants waived their rights when they accepted the benefits under the LSP, while Defendants argue that through this acceptance of the LSP paid leave, they waived their USERRA rights to retirement benefits. The Court has not found and the parties have not identified any Ninth Circuit binding cases that address the issues of USERRA supremacy and waiver. Therefore, the Court turns to out of circuit decisions and finds that the Sixth Circuit decisions discussed herein regarding waiver of USERRA rights and supremacy are persuasive.

In *Wysocki v. International Business Machine Corporation*, 607 F.3d 1102 (6th Cir. 2010), the Sixth Circuit analyzed when the USERRA supremacy clause under § 4302(b) is limited by the express non-supremacy clause in § 4302(a), and what constitutes waiver of the protected USERRA rights for a more beneficial right. *Id.* at 1107-08. In *Wysocki,* the service member plaintiff returned from military service and his company reemployed him. *Id.* at 1103. The service member alleged that his company refused to reintegrate him and terminated him in violation of USERRA. *Id.* The same day the company terminated the service member, he signed a release. *Id.* at 1104. The release stated, the service member waived "all claims, demands, actions or liabilities [he] m[ight] have against [the company] of whatever kind," and included within its scope "any other federal, state or local law dealing with discrimination in employment including, but not limited to, discrimination based on . . . veteran status . . . ." *Id.* The release also advised the service member that he should consult an attorney and provided a period of time to consider the release before the signing deadline, in addition to a period of time for the service member to revoke his acceptance after signing. *Id.*

The Sixth Circuit began its analysis by noting that the rights and benefits listed in § 4303(2) of USERRA are substantive rights. *Id.* at 1106. Where a service member's substantive rights are involved, § 4302 of USERRA is "squarely" implicated. *Id.* at 1107. However, just because § 4302 applies, USERRA does not automatically supersede any law, plan, or agreement. *Id.* To determine if the release was exempt from the USERRA supremacy clause by § 4302(a), the Sixth Circuit examined whether the rights provided to the service member were more beneficial than the rights he waived. *Id.* It reasoned that USERRA "clearly envisioned that veterans would be able to waive their individual USERRA rights by *clear and unambiguous action.*" *Id.* at 1108 (citing H.R. Rep. No. 103-65, at 20 (1993) (emphasis added)). The Sixth Circuit concluded, and the Fund agrees, that the release signed by the service member who waived "all claims, demands, actions or liabilities" regarding "discrimination based on . . . veteran status" against his employer was a valid release because he received financial compensation in exchange for it, was instructed to consult with an attorney before signing the release, and the release used clear and unambiguous language. *Id.* at 1104, 1108.

More recently, the Sixth Circuit addressed the issue of whether a settlement agreement was effective in releasing a service member's claim under USERRA. *Ward v. Shelby County, Tennessee*, 98 F.4th 688, 690 (6th Cir. 2024).[10] The Sixth Circuit specifically discusses the requirements of waiver under § 4302. *Id.* at 692-93. "[Section] 4302 does not make the courts guardians of servicemembers who choose to settle their USERRA claims. To the contrary, [the Sixth Circuit] said in *Wysocki*, servicemembers can 'waive their USERRA rights without unnecessary court interference, *if they believe* that the consideration they will receive . . . is more beneficial than pursuing their rights through the courts[.]'" *Id.* at 692 (quoting *Wysocki*, 607 F.3d

---

[10] The Sixth Circuit issued *Ward* after briefing closed for the parties' motions. However, the *Ward* Court discusses *Wysocki*, which the parties cited.

at 1108). "An individual servicemember knows better than the courts do whether the certainty of a lump-sum payment up front, for example, is 'more beneficial' to him than the possibility of a larger recovery later." *Id.* *Ward* clarified that there are no special words that will release a right in a waiver. *See id.* at 692. In these decisions, the Sixth Circuit outlined a subjective standard in which the Court relies on service members' determination as to whether the benefits they accept are more beneficial than the USERRA rights they waived.

As identified in *Wysocki*, the Court here finds that the supremacy provision in § 4302 of USERRA is "squarely" implicated by the LSP's prohibition against giving service members credit towards retirement at 4 G.C.A. § 4109.2(b)(3) because the rights at issue are substantive rights that fall under § 4303(2) of USERRA. In order for the waiver of supremacy in § 4302(a) to apply to Guam's LSP as being more beneficial than USERRA benefits and limit the supremacy clause of USERRA under § 4302(b), the service members must clearly and unambiguously recognize that accepting this LSP benefit is in exchange for a waiver of both their Guam and USERRA rights to credit towards retirement. *See Wysocki*, 607 F.3d at 1108; *Ward*, 98 F.4th at 692.

Here, the Fund provides the Court with four of the five claimants' records showing the benefits they received when they took unpaid leave under Guam law for military service. (ECF No. 98-2 at 3; ECF No. 98-3 at 2.) Through these submissions, the Fund contends that the Court should consider these benefits in determining whether the limitation of USERRA's supremacy clause applies. However, neither the *Wysocki* nor *Ward* Courts engaged in such an analysis as "[a]n individual servicemember knows better than the courts do whether the certainty of a lump-sum payment up front, for example, is 'more beneficial' to him than the possibility of a larger recovery later." *Ward*, 98 F.4th at 692. Therefore, the Court rejects the Fund's suggestion to apply an objective test in which the Court would conduct a financial cost-benefit analysis to

determine what is more beneficial for the service members. Instead, the Court adopts a subjective standard applied at the time the service member elects to receive the LSP paid leave benefit in exchange for giving up the USERRA benefits. Here, the undisputed evidence received is that claimants Torre and San Nicolas, together with their employer, paid their contributions to the Fund whenever they used shared leave. This evidence supports the conclusion that these service members accepted the LSP benefit, and contributed their portions consistent with USERRA.

The Fund also argues that under *Wysocki*, a service member may impliedly waive their USERRA rights. (Fund's Opp'n to Mot. Suppl.17.) In support of this argument, the Fund cites to *Wysocki* "noting that USERRA rights may be waived, 'either explicitly or impliedly, through conduct' (citing S. Rep. 103-1058, at 41 [sic]. . . .)." (*See id.* (citing *Wysocki*, 607 F.3d at 1108).) However, the Sixth Circuit actually noted that "the legislative history clearly envisioned that veterans would be able to waive their individual USERRA rights by clear and unambiguous action." *Wysocki*, 607 F.3d at 1108. In fact, the *Wysocki* Court applied the clear and unambiguous standard.

As to the affirmative defense of waiver, the Fund relies on the declaration of Kathryn M. C. Diaz, Employee Management Relations Office II/Supervisor for the Employee Management Relations ("EMR") Branch under the GovGuam DOA in the Human Resources Division. She declares that "EMR staff informs all employees that the donated leave may not be transferred if the Leave Recipient intends to use it for credit towards retirement or accumulated leave." (Fund's CSMF 36.) She further declares that "[t]o my knowledge and recollection, the EMR staff informed Andrew Quinata, Alan Torre, Jesse Cruz, Raymond San Nicolas, and Frederick Guzman that donated leave cannot be used for credit toward retirement, according to 4 G.C.A. § 4109.2." (*Id.*)

Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Personal knowledge can be inferred from an affiant's position." *Self-Realization Fellowship Church v. Amanda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (citing *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Ind., Inc.*, 84 F.3d 1186, 1193 (9th Cir. 1996); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). Diaz's personal knowledge of procedures at the GovGuam DOA under the Human Resources Division may be presumed from her role. *See id.* Therefore, the Court accepts as a fact that EMR staff informs all employees that donated leave may not be transferred if the leave recipient intends to use it for credit towards retirement or accumulated leave. However, this personal knowledge is not enough to establish that EMR staff informed the recipients of donated leave—the claimants in this action. Diaz has no personal knowledge of informing the claimants, nor does she name the EMR staff that informed the claimants. Therefore, Diaz's claim that EMR staff informed the claimants is inadmissible. Even if the Court were to accept that EMR staff informed the claimants, the evidence does not demonstrate a sufficient waiver of USERRA rights as waiver must be clear and unambiguous. Additionally, even if the service members were informed that donated leave may not be transferred if the leave recipient intends to use it for credit towards retirement, the LSP is not the sole basis by which service members can receive retirement credit; they are entitled to retirement credit under USERRA. If GovGuam wanted service members to waive such USERRA rights in exchange for LSP benefits under Guam law, merely informing them that the LSP does not allow that time to be used towards retirement credit is insufficient to constitute a USERRA waiver.

The claimants' depositions reveal that when the service members requested leave under the LSP, they shared the required documents with their supervisors or payroll clerk. (USA's Suppl. Br. 14-15, 36-38, 62, 98.) Some claimants were informed that they had less service credit towards retirement than believed and that this was because they used the LSP, but this notice was given after they already had used shared leave. (*Id.* at 22, 44-45.) Therefore, the only admissible evidence of service members being "informed" by anyone about the limitations under the LSP was after they had already elected to use the LSP. Waiver of USERRA rights cannot retroactively occur in this manner but must be made at the time the service members elected to use the LSP.

In the form for requesting leave and accompanying instructions for completing the form (Fund's CSMF 48-49), there is no language about the USERRA rights a person receiving the donated leave will forgo in exchange for the paid leave. The service member recipient does sign that they have secured "permission from my agency to use donated leave pursuant to the leave sharing procedures." (*Id.*) The LSP procedures state that "[i]t is the responsibility of the employee requesting for donated leave to obtain proper leave authorization from his supervisor and the department/agency head." (ECF No. 51-3 at 53.) This language is not enough to constitute a waiver of USERRA rights because it is not clear and unambiguous language of such release or waiver of USERRA rights. *See Wysocki*, 607 F.3d 1108. If GovGuam were to include clear and unambiguous language regarding USERRA waiver in its leave form and a service member acknowledged the consequence of accepting the donated leave on their rights, the Court would not need to analyze whether the benefits go beyond a service members' USERRA rights. That is, whether the benefit of receiving leave with pay under the LSP is more beneficial than the USERRA benefits the service members would forgo—credit towards retirement and employer-side contributions towards retirement— is determined by the service member and is

manifested unequivocally in writing by the signing of an express waiver of USERRA benefits in exchange for this paid leave consideration.

Because the Fund and GovGuam do not provide sufficient evidence permitting judgment on their affirmative defense of waiver, the Court finds that there is no genuine dispute of material fact and that Defendants have not defeated the United States' Motion for Summary Judgment on this basis. *See Forum Ins. Co.* 151 F. Supp. 2d at 1147 (citing *Celotex*, 477 U.S. at 325). The Court therefore grants the United States' Motion for Summary Judgment and finds that the LSP as applied to service members on active duty leave violates USERRA because GovGuam never obtained a valid waiver.

## C. The Fund's Counter-Motion for Summary Judgment for Quasi-Estoppel

The Court finds that the Fund is not entitled to summary judgment based on quasi-estoppel. The Fund asserts that claimants accepted monetary benefits under Guam's LSP, and the service members now challenge the validity of that same statute. (Fund Counter-MSJ 24.) The United States argues that as the sole party plaintiff, it has never sought to enforce any other right than that required under USERRA. (USA's Opp'n to Fund's Counter-MSJ 12.)

"Quasi-estoppel prevents a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions." *Short v. Singer Asset Fin. Co. LLC*, 107 Fed. Appx. 738, 739 (9th Cir. 2004) (citation omitted). In this instance, Guam's LSP is a voluntary leave program that gives its employees the option to avoid taking leave without pay in times of need and when they have already exhausted the leave that they have earned and accrued. 4 G.C.A. § 4109.2(a), (b)(1), (b)(3). Both service members and non-service members may use the LSP. This program is made possible "[t]hrough the generosity of the other employees." *Id.* § 4109.2(a). The voluntary nature is conditioned on a donor employee being willing to transfer a number of hours of earned sick leave or annual leave to another

employee—the recipient employee. Leave transferred shall be used as leave by the recipient employee, and "if it is not used in its entirety, it may be re-transferred to the person who originally earned it." *Id.* § 4109.2(b)(3). Also, under the LSP,

> [l]eave transferred from donors whose hourly rates of pay or salaries are *lower* than the recipient shall be paid at the hourly rate or salary of the donor. Leave transferred from donors whose hourly rates of pay or salaries are *higher* than the recipient, shall be paid at the hourly rate or salary of the recipient.

4 G.C.A. § 4109.2(b)(1) (emphasis added). If a service member had not received the donated leave under the LSP, GovGuam would still owe the donor the sum of money for their earned leave at the same or higher rate than what would have been provided to the service member under the LSP, and would be required to permit employer- and employee-side contributions, as well as provide credit towards retirement for the period of time the earned leave is used by the employee who originally earned it. Therefore, the Court cannot say that allowing the LSP payments to service members while protecting their USERRA rights would impose an unconscionable disadvantage upon GovGuam.

Also under the LSP, "[l]eave transferred from donors whose hourly rates of pay or salaries are *lower* than the recipient shall be paid at the hourly rate of salary of the donor. Leave transferred from donors whose hourly rates of pay or salaries are *higher* than the recipient, shall be paid at the hourly rate or salary of the recipient." 4 G.C.A. § 4109.2(b)(1) (emphasis added).

Finally, a service member accepting "benefits" under the LSP does not automatically surrender his rights under USERRA. This is evident because USERRA "clearly envisioned that veterans would be able to waive their individual USERRA rights by *clear and unambiguous action*," which the Court has found that the service members in this case have not done. *See Wysocki*, 607 F.3d at 1108 (emphasis added). If the service members had waived their rights under USERRA at the time they accepted the LSP donated leave, then they would be estopped from now asserting violations of USERRA—but this is not what the service members did.

Service members' acceptance of "benefits" under a state statute—in this instance, paid leave instead of being on unpaid leave—is not preempted by § 4302(b) because it is more beneficial than the protected USERRA benefits; however, this acceptance does not equate to waiver of a service members' rights under USERRA, which must be done clearly and unambiguously.

The LSP may prohibit any recipient employee from using their donated leave as the basis to earn credit towards retirement. For non-service member GovGuam recipient employees, that is a consequence of accepting the LSP paid leave benefit. However, as to service member employees, their basis to assert a right to retirement credits is not limited to the LSP; they may do so under USERRA. For these reasons, the doctrine of quasi-estoppel does not preclude the United States, the actual party in this action, or more particularly the claimants as the Fund argues from reaping the benefits of paid leave under the LSP. If GovGuam intends to preclude the service members from reaping the benefits of USERRA while on paid leave under the LSP, then it needs to give clear and unambiguous notice to them about this consequence to their USERRA rights. Accordingly, the Fund is not entitled to summary judgment on the basis of quasi-estoppel.

### D. GovGuam's Motion for Summary Judgment for Unjust Enrichment as to Claimant Guzman

GovGuam also moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 asserting that claimant Guzman was unjustly enriched in the amount of $42,993.73. (GovGuam's MSJ 3-4.) This Motion, although as to claimant Guzman's unjust enrichment, is still made against the United States. GovGuam argues that Guzman's donors through the LSP were not authorized to transfer leave to him pursuant to 4 G.C.A. § 4109.2(b)(3) despite the transfers being approved by the DOA Directors. (*Id.* at 6-8.) The United States argues that Guzman is not a party to this matter, and therefore, the Court does not have subject matter jurisdiction over claimant Guzman. (USA's Opp'n to GovGuam's MSJ 4.) The United States, in a footnote in its Opposition, introduces that the Ninth Circuit has identified "nominal defendants"

in the securities law context in which the Court does not need to obtain subject matter jurisdiction over the nominal defendant. (*Id.* at 3-4 n.1.) Further, the United States argues that GovGuam cannot claim unjust enrichment without first admitting that GovGuam is liable to Guzman for service credits. (*Id.* at 6.) Lastly, the United States argues that GovGuam's assertion of unjust enrichment is preempted by USERRA. (*Id.* at 8.) In GovGuam's Reply, it asserts that Guzman is a nominal defendant, and thus, the Court does have jurisdiction. (GovGuam's Reply in Support of MSJ 2-3.)

As an initial matter, Claimant Guzman is not a named party pursuant to Federal Rule of Civil Procedure 10. Fed. R. Civ. Proc. 10(a) ("The title of the complaint must name all the parties."). The Ninth Circuit and district courts have defined a non-party or nominal defendant in securities and non-securities cases in which courts have subject matter jurisdiction over a claim. In *Securities Exchange Commission v. Cross Financial Services, Inc.*, cited by GovGuam, a Ninth Circuit district court looked to the Seventh Circuit for guidance on nominal or non-party defendants. 908 F. Supp. 718, 730-31 (C.D. Cal.1995). "A court can obtain equitable relief from a non-party against whom no wrongdoing is alleged if it is established that the non-party possesses illegally obtained profits but has no legitimate claim to them. Courts have jurisdiction to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds from securities laws violations." *Id.* A nominal defendant is a person holding the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute. *Sec. & Exch. Comm'n v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). Here, GovGuam does allege wrongdoing by claimant Guzman. (GovGuam's Reply in Support of MSJ 4.) GovGuam states, "Guzman . . . obtained LSP cash by willfully violating Guam's LSP provision and procuring others' wrongful conduct." (*Id.*) GovGuam's own arguments that claimant Guzman committed wrongdoing is incongruous to the securities cases GovGuam cites in attempting to assert that

claimant Guzman is a nominal defendant. The Court finds that the securities law cases GovGuam cites to do not support the position that claimant Guzman is a nominal defendant because GovGuam alleges wrongdoing.

Further, in the non-securities law setting, GovGuam does not provide any case law to support the contention that claimant Guzman is a nominal defendant. The Court analyzes *Perez v. Wells Fargo Bank, N.A.,* 929 F. Supp. 2d 988 (N.D. Cal. 2013), to determine if Guzman may be considered a nominal defendant in the non-securities law context. In *Perez*, the plaintiffs asserted that a named defendant was actually a nominal defendant and therefore the Ninth Circuit district court should not consider the named defendant's citizenship when determining whether diversity jurisdiction existed. *Id.* at 991, 995. The district court found that the plaintiffs did not demonstrate that the named defendant was a nominal defendant. *Id.* at 1005. "A nominal party is one 'who has no interest in the action' and is merely joined to 'perform a ministerial act.'" *Perez*, 929 F. Supp. 2d at 1002 (quoting *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000)).

> The paradigmatic nominal defendant is "a trustee, agent or depositary . . . [who is] joined purely as a means of facilitating collection." As the nominal defendant has no legitimate claim to the disputed property, he is not a real party in interest. Accordingly, "there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction of the defendant is established."

*Sec. & Exch. Comm'n*, 139 F.3d at 676 (internal citations omitted).

In this case, GovGuam is attempting to characterize the unnamed claimant Guzman as a nominal defendant. (GovGuam's Reply in Support of MSJ 3.) The Court has not found any case law in which a named defendant asserts a claim against a nominal defendant in the securities or non-securities law contexts, nor any other case law that supports GovGuam's arguments. Although the facts in *Perez* are not congruous with those in this case, even applying the nominal defendant definition articulated by the *Perez* court, claimant Guzman does not qualify as a

nominal defendant. Determining whether Guzman was unjustly enriched is not a ministerial act. Nor can he properly be categorized as akin to a trustee, agent, or depositary joined purely as a means of facilitating collection. Therefore, based on the case law in both the securities and non-securities law contexts, the Court finds that claimant Guzman is not a nominal defendant and thus, the Court does not have jurisdiction over GovGuam's Motion for Summary Judgment for Unjust Enrichment as to Claimant Guzman.

In addition, the Court has found that the Fund and GovGuam violated USERRA when they treated leave under the LSP as a break in service regarding retirement contributions because they did not obtain a waiver from the service members. The disputed property is not the money that service members received as paid leave through the LSP, but rather their substantive entitlement under USERRA while on leave through the LSP. For these reasons, the Court finds that Guzman is not a named party nor a nominal defendant and therefore dismisses GovGuam's Motion for Summary Judgment for lack of jurisdiction.

## IV.    CONCLUSION

Guam law provides some benefits to GovGuam employees when they take leave from work to serve in the Armed Forces, with most of them clearly more beneficial than the benefits conferred on the service members under USERRA. However, one Guam law—the LSP as applied to service members—is the source of the dispute in this case. For the foregoing reasons, the Court finds that USERRA supersedes the LSP's prohibition against giving service members credit towards retirement and the related benefits. In particular, the Fund and GovGuam's treatment of each service member's leave under GovGuam's LSP as a break in service violates their rights under USERRA but for a waiver, and there has been no waiver in this case. Accordingly, the Court hereby GRANTS the United States' Motion for Leave to Supplement its Motion for Summary Judgment, GRANTS the United States' Motion for Summary Judgment as

to liability against both Defendants, DENIES the Fund's Counter-Motion for Summary Judgment, and DISMISSES GovGuam's Motion for Summary Judgment for Unjust Enrichment.

IT IS SO ORDERED this 4th day of September 2025.

RAMONA V. MANGLONA
District Judge